## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SAMANTHA BROOKOVER and
AMANDA ABRAMOVICH,

|||
|---|---|
| | ELECTRONICALLY FILED |
| | **Apr 17 2017** |
| | U.S. DISTRICT COURT |
| | Northern District of WV |

*Plaintiffs*,

v.

Civil Action
No. _____1:17-CV-57 (Keeley)_____

GILMER COUNTY,

**COMPLAINT**

DEBBIE ALLEN, both individually and in
her official capacity as Gilmer County
Deputy Clerk,
and

JEAN BUTCHER, both individually and in
her official capacity as Gilmer County
Clerk,

*Defendants*.

## COMPLAINT

### I.    Introduction

1. "Decisions concerning marriage are among the most intimate that an individual can make." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2589 (2015). Marriage is "essential to our most profound hopes and aspirations." *Id.* at 2594. Because marriage is a fundamental right, the Constitution guarantees that all Americans—including same-sex couples—may marry "on the same terms and conditions." *Id.* at 2605.

2. But not in Gilmer County. Here, same-sex couples are not afforded the right to marry on the same terms and conditions as opposite-sex couples because officials at the Gilmer County Clerk's Office intimidate, humiliate, and harass them when they exercise their legal right to apply for and obtain a marriage license. And when a deputy clerk demeans, insults, or chastises a same-sex couple attempting to obtain a marriage license, County Clerk Jean Butcher defends their behavior because it is consistent with her personal religious convictions.

3. Amanda Abramovich and Samantha Brookover are high-school sweethearts who have been in a committed, loving relationship for six and a half years. On February 3, 2016, seven months after the Supreme Court held in *Obergefell* that states may not deprive same-sex couples of their constitutional right to marry, Amanda and Samantha visited the Gilmer County Clerk's Office to obtain their marriage license so that they could finally sanctify their bond in the way that other couples do. Samantha's mother, stepfather, and niece accompanied them, expecting to witness what should have been one of the happiest days of Amanda's and Samantha's lives.

4. But they were denied that happy experience. When Deputy Clerk Debbie Allen saw that a same-sex couple was applying for a marriage license, she did not provide the license on the same terms as for opposite-sex couples. Instead, Allen launched into a tirade of harassment and disparagement. She slammed her paperwork down on her desk, screaming that the couple was an "abomination" to God and that God would "deal" with them. Her rant continued for several minutes. Another clerk joined in, encouraging Allen's attack on Amanda and Samantha by shouting "it's [Allen's] religious right" to harass same-sex couples while performing the official state duties of the Clerk's office.

5. Throughout the attack, Amanda remained silent and shaking; Samantha was brought to tears.

6. When Samantha's mother later called County Clerk Butcher to report the abusive attack on her daughter and her daughter's fiancée, Butcher said that the couple deserved it and that the next same-sex couple who attempted to get a marriage license in Gilmer County would get the same or worse.

7. Thus, same-sex couples in Gilmer County who wish to marry are faced with an unacceptable choice: run a gantlet of harassment, belittling, religious condemnation, and discrimination, or else forgo their dreams of marriage. Our Nation is governed by civil—not religious—law. Treating same-sex couples differently from other couples, out of religious conviction or otherwise, violates the Equal Protection and Due Process Clauses. And actions by public officials that are grounded in their personal religious preferences violate the Establishment Clause. Simply put, the U.S. Constitution prohibits government officials from using their official actions to advance their personal religious agendas. The Gilmer County Clerk and her deputies flout that fundamental principle by discriminating against and depriving same-sex couples of equal access to the institution of marriage. Their policies and practices thus violate the mandate of *Obergefell* and the First and Fourteenth Amendments to the U.S. Constitution. The violations must stop.

## II. Parties

8. Plaintiffs Amanda Abramovich and Samantha Brookover are residents of Gilmer County, West Virginia. They obtained a marriage license from the Gilmer County Clerk's Office, but only after being subjected to a religious tirade from the government officials who were obligated by law to serve them.

9. Defendant Jean Butcher is the Clerk of the County Commission for Gilmer County. In her official capacity, she is responsible for receiving applications for and issuing marriage licenses.

10. Defendant Debbie Allen is a Deputy Clerk in the Gilmer County Clerk's Office. As one of Defendant Butcher's duly selected deputies, Allen is authorized to receive applications for and issue marriage licenses.

11. Defendant Gilmer County is a political subdivision organized under West Virginia law.

### III.   Jurisdiction and Venue

12. This Court has subject-matter jurisdiction over Amanda and Samantha's federal claims under 28 U.S.C. §§ 1331 and 1343.

13. This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b).

### IV.   General Allegations

15. In West Virginia, a couple obtains a marriage license from the Clerk of the County Commission in the county of residence for either of the applicants. W. VA. CODE § 48-2-102.

16. Clerks of the County Commission, i.e., County Clerks, employ deputies to assist them in fulfilling their duties, including their duty to issue marriage licenses. *See* W. VA. CODE § 7-7-7.

### Plaintiffs' First Attempt to Obtain a Marriage License

17. On July 28, 2014, the United States Court of Appeals for the Fourth Circuit recognized that the U.S. Constitution protects the right of same-sex couples to marry on precisely the same terms as different-sex couples. *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014).

18. On learning that West Virginia would now for the first time be required to issue marriage licenses to same-sex couples, Defendant Butcher told fellow government employees in the county courthouse that, if any same-sex couple requested a marriage license from her, she would humiliate the couple and refuse to issue a license to them.

19. Further, Butcher told fellow county employees that she would stand by and vouch for her deputy clerks if they harassed, humiliated, or denigrated or refused to issue a marriage license to a same-sex couple.

20. On October 9, 2014, West Virginia Governor Ray Tomblin ordered state agencies to comply with *Bostic v. Schaefer*, thus requiring state employees to issue marriage licenses to same-sex couples. *See Governor Tomblin Issues Statement Regarding Same-Sex Marriage in West Virginia*, Office of the Governor (Oct. 9, 2014), http://tinyurl.com/ldenzna.

21. In October 2014, shortly after the Governor's announcement, Samantha and Amanda went to the Gilmer County Clerk's Office to obtain a marriage license. Both resided (and still reside) in Gilmer County.

22. At the Clerk's Office, Defendant Allen responded to the couple's request to issue a marriage license.

23. Allen treated Amanda and Samantha with hostility, just as Defendant Butcher, her boss, had authorized.

24. Allen refused to process the marriage-license application, purportedly because neither Amanda nor Samantha had presented a driver's license listing an address in Gilmer County.

25. Allen's refusal to issue the marriage license on this basis was pretext: The West Virginia Code does not require that marriage applicants possess an in-county driver's license—or any driver's license at all. W. VA. CODE § 48-2-104 (2016).

26. Both Amanda and Samantha were residents of Gilmer County at the time.

27. Amanda and Samantha's landlord came to the Clerk's Office with them and attested to their residency within the county, but Allen refused to listen.

28. Allen also refused to review Amanda and Samantha's lease or utility bills, which would have proved their residency in Gilmer County.

29. The couple left the Clerk's Office without a marriage license and under the false impression that they needed to obtain in-county driver's licenses to exercise their right to marry.

### Plaintiffs' Second Attempt to Obtain a Marriage License

30. On June 26, 2015, the U.S. Supreme Court recognized same-sex couples' right to marry. *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015). The Supreme Court held that any state law that "exclude[s] same-sex couples from civil marriage on the same terms and conditions as opposite-sex couples" is invalid. *Id.* at 2605.

31. On February 3, 2016, Amanda and Samantha again went to the Gilmer County Clerk's Office to obtain a marriage license.

32. They arrived at the Clerk's Office with Samantha's mother, stepfather, and young niece.

33. Defendant Allen was working in the Clerk's Office when the couple and Samantha's family arrived.

34. When Amanda and Samantha requested a marriage license from her, Allen slammed down her papers.

35. While she processed the marriage-license application, Allen yelled at the couple that they were an "abomination" to the Lord God, that she was a Christian; that what they were doing was wrong and shouldn't be legal; and that God would "deal" with them.

36. Hearing Allen's words, Samantha began to cry. Seeing the effect on her daughter, Samantha's mother asked Deputy Clerk Allen to stop her tirade.

37. Allen responded that it was her religious right to say what she wanted, as long as she issued the license.

38. Another deputy clerk joined in, contending that it was Allen's "religious right" to harass the couple for seeking the marriage license to which same-sex as well as opposite couples are legally entitled.

39. Allen continued to belittle Amanda and Samantha while processing the license application.

40. Allen concluded the encounter by saying that she had to get her feelings off her chest.

41. Samantha cried throughout this entire encounter.

42. Amanda became so angry that she could feel her fingers shake as she signed the forms for their marriage-license application. She felt especially upset that Allen's tirade had caused her fiancée Samantha to burst into tears on the day that they were getting married—which should have been a joyous occasion.

43. After issuing the marriage license, and in a further attempt to deter the couple from marrying, Allen told Amanda and Samantha that officials in Gilmer County had stopped performing marriages after the County had become legally required to recognize same-sex marriages and that no one in Gilmer County would marry the couple.

### Communications with Defendant Butcher

44. After the encounter with Allen, Samantha's mother called Defendant Butcher, the County Clerk, to inform her about her employees' conduct.

45. Butcher told Samantha's mother that she knew what had happened and did not think that her employees had done anything wrong.

46. Butcher also said that the couple deserved it.

47. When Samantha's mother asked Butcher if it would be acceptable for her employees to repeat their behavior with the next same-sex couple who sought a marriage license, Butcher said that her staff did nothing wrong and that the next couple would get the same or worse.

48. This type of unconstitutionally discriminatory treatment is not unique. In the aftermath of *Obergefell*, a number of government officials expressed reservations about complying with the Supreme Court's directive because they did not support marriage of same-sex couples as a matter of personal religious preference, and some refused to comply with federal law. *See, e.g.,* Alan Blinder and Tamar Lewin, *Clerk in Kentucky Chooses Jail over Deal on Same-Sex Marriage*, N. Y. Times, Sept. 3, 2015, *available at* http://www.nytimes.com/2015/09/04/us/kim-davis-same-sex-marriage.html. *See also Miller v. Davis*, 123 F. Supp. 3d 924 (E.D. Ky. 2015) (enjoining county clerk from refusing to issue marriage licenses based on her religious opposition to same-sex marriage); *Strawser v. Strange*, No. 14-0424-CG-C, 2016 WL 3199523 (S.D. Ala. 2016) (enjoining state officials from refusing to issue marriage licenses to same-sex couples).

49. Although individuals certainly have the right to advocate for their personal religious beliefs as *private* citizens, the State—and employees acting as officials of the State—may not use religion to intimidate or harass a same-sex couple seeking a marriage license.

### Plaintiffs' Injuries

50. Amanda and Samantha have sustained and will continue to sustain injuries as a result of Defendants' unconstitutional policies and actions.

51. When people marry, they often describe the day as the happiest of their lives. But for Amanda and Samantha, their anniversary is a yearly reminder of the pain and humiliation that they suffered on their wedding day.

52. Defendants intentionally deprived Amanda and Samantha of that joy through their misconduct.

53. Additionally, Amanda and Samantha were made to wait some sixteen ***months*** after their initial, lawful application for a marriage license because they were improperly turned away by

Defendant Allen. Not only did they suffer emotional distress because of the wrongful denial, but during the intervening period they were denied all the legal (as well as emotional) benefits of marriage, including benefits and privileges under federal and state law; legal rights to make healthcare decisions rights for one's spouse; legal rights and presumptions concerning the ability to hold real property, bank accounts, and other property in common; important and valuable rights under West Virginia's estate and intestacy laws; and a host of other privileges under West Virginia family law.

54. As a result of Defendants' intentional conduct, Amanda and Samantha experienced and continue to suffer severe emotional distress.

55. The injuries that they sustained will continue at least until Defendants are required to change their unconstitutional policy.

56. In West Virginia, the County Clerk performs many essential governmental functions: Residents must visit the Clerk's Office to pay certain taxes, record deeds, and register to vote. *See* W. VA. CODE §§ 3-2-7 (in-person registration to vote), 11-11-23 (taxes on estate), 59-1-10 (recording of deeds and trustee reports on sale).

57. Moreover, the Clerk's Office is located in the Gilmer County Courthouse, where other government services are provided.

58. Amanda and Samantha must visit the Courthouse every year to pay property taxes on their automobiles.

59. Amanda and Samantha are in the process of looking for a house to purchase and, should they do so, will need to visit the Courthouse every year to pay property taxes.

60. Samantha wishes to register to vote in Gilmer County but fears that she will be harassed once again by Allen at the Courthouse.

61. Amanda and Samantha reasonably fear that, because of the unconstitutional policies of the Gilmer County Clerk, they will be deprived of equal access to government services in the Gilmer County Courthouse. And they reasonably fear that, when they are forced to enter the Courthouse, they will again be harangued and mistreated by Clerk's Office personnel.

## V.    Claims for Relief

### First Claim for Relief: Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution

62. The actions of Defendants set forth in paragraphs 1 through 61, fully incorporated here, entitle Plaintiffs to relief under 42 U.S.C. § 1983 because Defendants, acting under color of law and official County policy or custom during all relevant times, have subjected and will continue to subject Plaintiffs to deprivations of their rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

63. The Fourteenth Amendment guarantees to every person "the equal protection of the laws."

64. By disparaging and haranguing Amanda and Samantha, and by permitting County officials in the performance of their official duties to disparage and harangue same-sex couples seeking marriage licenses, Defendants have unconstitutionally discriminated and continue as a matter of policy or practice to discriminate on the bases of sex and sexual orientation.

65. Defendants have also discriminated, and continue to discriminate as a matter of policy or practice in granting and recognizing the fundamental right to marry.

66. Through their policy of permitting County officials to disparage and harangue same-sex couples seeking marriage licenses, Defendants impermissibly "impose a disadvantage, a separate status, and so a stigma upon all who enter into same-sex marriages." *United States v. Windsor*, 133 S. Ct. 2675, 2681 (2013).

**Second Claim for Relief: Violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution**

67. The actions of Defendants set forth in paragraphs 1 through 61, fully incorporated here, entitle Plaintiffs to relief under 42 U.S.C. § 1983 because Defendants, acting under color of law and official County policy or custom during all relevant times, have subjected and will continue to subject Plaintiffs to deprivations of their rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

68. The Fourteenth Amendment prohibits states from denying "life, liberty or property, without due process of law."

69. "[T]he right to marry is fundamental under the Due Process Clause." *Obergefell*, 135 S. Ct. at 2598.

70. By harassing, disparaging, and insulting Amanda and Samantha, Defendants interfered with the couple's due-process right to marry.

71. By harassing, disparaging, and insulting Amanda and Samantha, Defendants "imposed stigma and injury of the kind prohibited by our basic charter." *Obergefell*, 135 S. Ct. at 2602.

**Third Claim for Relief: Violation of the Establishment Clause of the First Amendment to the U.S. Constitution**

72. The actions of Defendants set forth in paragraphs 1 through 61, fully incorporated here, entitle Plaintiffs to relief under 42 U.S.C. § 1983 because Defendants, acting under color of law and official County policy or custom during all relevant times, have subjected and will continue

to subject Plaintiffs to deprivations of their rights under the Establishment Clause of the First Amendment to the U.S. Constitution.

73. The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." This provision applies fully to the acts of state and local governments and officials through the Due Process Clause of the Fourteenth Amendment.

74. Defendants have violated, and will likely continue to violate, Amanda's and Samantha's rights under the Establishment Clause, including in the following ways:

        a.    Defendants have established a custom and policy that County officials—like Defendant Allen—may express religious messages to members of the public while functioning in their official capacity and fulfilling their governmental duties.

        b.    Defendant Allen's statements—and Defendant Butcher's and Defendant Gilmer County's policy of encouraging and defending such statements—constitute governmental conduct that has and will continue to have the primary purpose of promoting and advancing religion.

        c.    Defendants' statements and policy had and will continue to have the effect of endorsing and advancing religion.

        d.    Defendants' statements and policy excessively entangle government with religion.

        e.    Defendants' statements and policy constitute religious coercion by attempting to prevent couples from exercising their fundamental right to marry because of Defendants' contrary religious beliefs and by attempting to humiliate and harass same-sex couples into complying with Defendants' religious beliefs.

12

f.     Defendants' statements and policy constitute governmental endorsement of religion because a reasonable observer would believe that Defendants have endorsed a particular religious view. The harassment that Amanda and Samantha experienced sent the clear message "that they are outsiders, not full members of the political community." *Lynch v. Donnelly*, 465 U.S. 668, 688 (1984).

## VI.     Prayer for Relief

75. Paragraphs 1 through 74 above are fully incorporated here.

### A. Declaratory Judgment

76. An actual controversy exists between the parties as to whether Defendants' conduct has violated and continues to violate the First and Fourteenth Amendments. Accordingly, Plaintiffs respectfully request a declaratory judgment that Defendants' discriminatory and religious remarks and harassment of Amanda and Samantha and similarly situated individuals and couples are unconstitutional and that Defendants have violated, and continue to violate, the U.S. Constitution.

### B. Preliminary and Permanent Injunction

77. Samantha and Amanda have no adequate remedy at law.

78. Defendants' violations have inflicted, and will continue to inflict, irreparable harm on Amanda and Samantha. They therefore respectfully request a preliminary and permanent injunction prohibiting Defendants from expressing religious and discriminatory remarks to same-sex couples or refusing service to same-sex couples who approach or seek service from the Gilmer County Clerk's Office.

79. Amanda and Samantha also respectfully request that the preliminary and permanent injunction require Defendants to adopt a county-wide staff-training program to educate county

employees about the constitutional limitations on their expressions of religious viewpoints and discriminatory animus.

## C.  Damages

80. Amanda and Samantha respectfully request compensatory damages from Defendants Allen and Butcher in their individual capacities for the emotional distress and other injuries that Defendants Allen and Butcher have inflicted and continue to inflict through their unconstitutional conduct.

81. Amanda and Samantha respectfully request compensatory damages from Defendant Gilmer County based on the County's pattern, practice, or policy of discriminating against same-sex couples.

82.  Amanda and Samantha respectfully request punitive damages from Defendants Allen and Butcher in their individual capacities because Defendants' actions have exhibited malice, evil motive, or reckless or callous indifference to Amanda and Samantha's constitutional rights.

## D.  Attorneys' Fees, Costs, and Expenses

83. Amanda and Samantha request an order awarding them the costs of this action, including attorneys' fees and expenses, under 42 U.S.C. § 1988 and 29 U.S.C. § 2412.

## E.  Additional Relief

84. Amanda and Samantha request all other relief that the Court deems just and proper.


Respectfully submitted,


/s/ Robert M. Bastress, Jr.
Robert M. Bastress, Jr.
COOPERATING COUNSEL FOR
FAIRNESS WEST VIRGINIA

14

WV Bar # 263
P.O. Box 1295
Morgantown, WV 26507
Tel.: (304) 319-0860
Fax: (304) 293-6891
*rmbastress@gmail.com*

Richard B. Katskee*
Eric Rothschild*[+]
Kelly M. Percival*[++]
AMERICANS UNITED FOR
SEPARATION OF CHURCH AND STATE
1310 L Street NW, Suite 200
Washington, DC 20005
Tel.: 202-466-3234
Fax: 202-466-2587
*katskee@au.org* / *rothschild@au.org* /
*percival@au.org*

Brian D. Netter*
MAYER BROWN LLP
1999 K St. NW
Washington, DC 20006
Tel.: (202) 263-3000
Fax: (202) 263-3300
*bnetter@mayerbrown.com*

Manuel J. Velez*
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Tel.: (212) 506-2296
Fax: (212) 262-1910
*mvelez@mayerbrown.com*

Dated: April 17, 2017

* Motion for admission *pro hac vice* to be filed.

[+] Admitted only in Pennsylvania. Supervised by Richard B. Katskee, a member of the bar for the District of Columbia.

[++] Admitted only in California. Supervised by Richard B. Katskee, a member of the bar for the District of Columbia.